CAMERON and others, Respondents, vs. WHITE, Appellant.

*September 9 — September 24, 1889.*

*(1) Reformation of contract: Clerical error. (2) Measure of damages: Manufacture and sale of lumber. (3, 4) Reversal of judgment: Evidence: Agency.*

74 425
85 224
74 425
88 652
74 425
92 402
74 425
110 269
s 5 LRA 493
47 LRA 207n
52 LRA 255n

1. A contract for the getting out and delivery of sawed lumber was dated December 28, 1886, but stated that it was to be performed on or before August 1, 1886. *Held,* that although lumbermen might infer that the date of performance intended was August 1, 1887, yet the contract must be reformed before there could be a recovery for a breach thereof.

2. Plaintiffs, having contracted to sell and deliver sawed lumber to the defendant, purchased the logs from which such lumber was to be sawed, but before any of it had been sawed the defendant notified them that he would not fulfil the contract. *Held,* that the measure of damages was the profits which the plaintiffs would have made on the contract, and not the difference between the contract price and the price for which they afterwards sold the lumber.

3. In an equity case an error in the admission of evidence will not work a reversal if the evidence properly admitted sustains the findings.

4. A principal having testified that his agent was not authorized to bind him by a contract, and the agent having testified that he was so authorized, a finding that the agent had such authority is held to be sustained, independently of testimony that the agent had made other contracts of a like character which had been recognized and performed by the principal.

APPEAL from the Circuit Court for *Milwaukee* County.

Action to reform a written contract for the sale and delivery to the defendant of a quantity of sawed lumber, and to recover damages for a breach thereof. The defendant was a lumber dealer, doing business in the city of Milwaukee under the name of the Phœnix Lumber Co. The facts will sufficiently appear from the opinion. The defendant appeals from a judgment in favor of the plaintiffs.

For the appellant there were briefs by *Finches, Lynde & Miller*, attorneys, and *E. P. Smith*, of counsel, and oral argument by *Mr. Smith*. They contended, *inter alia*, that it was error to allow the plaintiff, for the purpose of establishing the agency of Mr. Reed, to introduce proof of transactions and statements disconnected with the main transaction and not made or taking place at the same time and constituting part of the *res gestæ.* 1 Greenl. Evi. sec. 113; *Komorowski v. Krumdick*, 56 Wis. 23; *McIndoe v. Clark*, 57 id. 165; *Schwalback v. C., M. & St. P. R. Co.* 73 id. 137–141. As to the measure of damages, they cited 2 Suth. on Dam. 258, 359–60, 362; *Danforth v. Walker*, 37 Vt. 239; *Collins v. Delaporte*, 115 Mass. 159; *Allen v. Jarvis*, 20 Conn. 38; *Laird v. Pim*, 7 Mees. & W. 474; *Cort v. A., N. & B. & E. J. R. Co.* 17 Q. B. 127; *Chapman v. Ingram*, 30 Wis. 290; *Ganson v. Madigan*, 13 id. 67; *S. C.* 15 id. 144; *Fell v. Muller*, 78 Ind. 507; *Petrie v. Lane*, 58 Mich. 527; *Frazer v. Clark*, 10 S. W. Rep. (Ky.), 806; *Allis v. McLean*, 48 Mich. 433; *Talcott v. Crippen*, 52 id. 633;

*Bierbach v. Goodyear Rubber Co.* 54 Wis. 208; *Anderson v. Sloane,* 72 id. 583; *Shannon v. Comstock,* 21 Wend. 461; *Miller v. Mariner's Church,* 7 Me. 51; *Pollen v. Le Roy,* 30 N. Y. 556–7; *Whitney v. Boardman,* 118 Mass. 248.

*Chas. T. Hickox,* for the respondents, as to the measure of damages, cited, in addition to the cases referred to in the opinion, *Hinkley v. Beckwith,* 13 Wis. 31; *Shepard v. Milwaukee G. L. Co.* 15 id. 329; *Fox v. Harding,* 7 Cush. 516; *Fairchild v. Rogers,* 32 Minn. 269; *Glaspie v. Glassow,* 28 id. 158; *Mississippi & R. R. B. Co. v. Prince,* 34 id. 71; *Burrell v. New York & S. S. S. Co.* 14 Mich. 34; *Clark v. New York,* 4 N. Y. 338; *Cramer v. Metz,* 57 id. 659; *Hoy v. Gronoble,* 34 Pa. St. 9; *Goodrich v. Hubbard,* 51 Mich. 62; *Atkinson v. Morse,* 63 id. 276; *Masterton v. Mayor,* 7 Hill, 61; *U. S. v. Behan,* 110 U. S. 338; *Black River L. Co. v. Warner,* 93 Mo. 374; *Philadelphia, W. & B. R. Co. v. Howard,* 13 How. 344; *Hinckley v. Pittsburgh B. S. Co.* 121 U. S. 264; *Dunn v. Johnson,* 33 Ind. 54; *Leonard v. Beadry,* 36 N. W. Rep. (Mich.), 88.

TAYLOR, J.   The respondents brought this action to reform a contract for getting out and delivering to the appellant a large quantity of sawed hard-wood lumber, and in the same complaint they seek to recover damages of the defendant for a breach of such contract.

That the respondents may join two such causes of action, one in equity and one at law, is not controverted. This court has decided that such causes of action may be joined, under the provisions of sec. 2647, R. S. *Harrison v. Juneau Bank,* 17 Wis. 340, 350. This court has also decided that in such actions the equitable action should be tried by the court, and the legal cause of action by the court and jury. Sec. 2843, R. S.; *Harrison v. Juneau Bank, supra; Gunn v. Madigan,* 28 Wis. 158, 167. In the regular order of proceeding in an action of this kind, the equitable issue for the

reformation of the contract should be first tried by the court, and afterwards the legal issues as to the breach and damages. *Hammel v. Queen Ins. Co.* 50 Wis. 240. The fact that the court submitted all the issues to a jury in the first instance, and took their verdict upon such issues, was not error, as the court, after taking the verdict of the jury upon the issue upon the reformation of the contract, made and filed findings of fact and conclusions of law which sustain the judgment reforming the contract. *Harrison v. Juneau Bank,* 17 Wis. 340, 350.

We do not understand that the counsel make any complaint upon the regularity of the trial, but insist that there was no necessity for a reformation of the contract, claiming that it was apparent on its face when it was intended that its performance should take place. The mistake in the contract was in stating that it should be performed on or before the 1st of August, 1886, when it appeared on the face of the contract that the contract itself was made December 28, 1886, some months after its performance was required. It was claimed by the plaintiffs that there was a mistake in the date of performance, and that it was intended to have been written the 1st day of August, 1887, instead of 1886. We think the court was right in holding that it was necessary to reform the contract to make it conform to the agreement of the parties, before an action for its breach could be sustained. The date of performance stated in the contract being an impossible date, there was nothing to indicate when it was to be performed. Although lumbermen and men familiar with that kind of business might infer that the date of performance intended was 1887, still there was no certainty about the matter. The date which should be inserted in the contract was the date agreed upon between the parties, and that might have been some other date as well as August 1, 1887.

The appellant alleges as error the introduction of certain

evidence on the part of the plaintiffs, introduced to prove
the agency of the person who made the contract on the
part of the defendant.   The contract was in fact made on
the part of the defendant by one Willis S. Reed, who
claimed to be the agent of the defendant, having power to
bind the defendant.   There was a conflict of testimony on
the subject of the agency of Reed to make the contract on
behalf of the defendant.   Reed testified that he had power
to make such contract, and that he was authorized by the
defendant to make it.   The defendant testified that he was
not authorized to bind him by contract, and that he was
only sent out by him to find out what he could contract lum-
ber for, and to report to him.   Reed testified that he was
sent out to contract for the purchase of lumber to be deliv-
ered in the future, and that he was authorized to fix the
price to be paid.   The defendant and Reed were the only
witnesses whose testimony had a bearing upon the question
of agency.   In this state of the evidence the court permit-
ted the plaintiff to show by Reed that, shortly before and
after the making of the contract in question, Reed, as the
agent and acting for the defendant, had made contracts
with other parties of a like nature to the one made with
the plaintiff, and that the plaintiff had recognized such con-
tracts and performed them on his part.   The contracts of-
fered in evidence, and to which objections were taken, were
all made by Reed during a single trip made by him to the
lumber regions, and both Reed and the defendant testify
that he was acting under the same instructions from the
defendant at the time all the contracts offered in evidence
were made.   Under this state of the facts, it is not certain
that there was any error in permitting the introduction of
the evidence, even on a trial by jury, upon the question as
to whether the defendant was bound by the contract made
by his alleged agent.   *Chicago & N. W. R. Co. v. James*,
24 Wis. 388.   In this case we think the evidence as to the

authority of the agent to make the contract was a part of the evidence upon the issue for the reformation of the contract, and not evidence addressed to the jury upon the question as to its breach and damages. Were it to be held that such evidence was not strictly admissible, still, in an equity case such error would not necessarily reverse the judgment if there is other evidence in the case sufficient to sustain the findings of the court. In this case we think the evidence quite sufficient to sustain the finding that the agent was authorized to make the contract in suit, independently of the evidence that the agent had made other contracts of a like character, which had been recognized and performed by the defendant.

The only error assigned by the appellant is that the court improperly excluded evidence affecting the question of damages. The following is a copy of the contract, as reformed, upon which the claim for damages is based:

"TORCH LAKE, MICH., Dec. 28th, 1886. Phœnix Lumber Co., Milwaukee, Wis.— Gents: We will sell you, and deliver to rail of your vessels at our dock, on or before August 1st, '87, the following amounts and kinds of lumber, at prices we name; lumber to be log run, with mill culls and hearts out; to be measured straight; no deduction for imperfections; to be inspected and measured here within fifteen days after we report it ready; to be paid for on delivery of each cargo; we to cross-pile the lumber as sawed, and to bear half the cost of measuring and inspecting, and give vessel fair and reasonable dispatch in loading; lumber to be cut well, and also plumb in thickness, and to make a fair proportion of the maple into widths that will rip into 3-inch strips. We would want $500.00 advanced to us within thirty days:

| | | |
|---|---|---|
| 500,000 ft. maple, @ per M | $11 | 00 |
| 100,000 " elm, @ per M | 10 | 00 |
| 50,000 " bass-wood, @ per M | 10 | 00 |

Cameron and others vs. White.

25,000 ft. beach, @ per M...................................... $10 00
25,000 " birch, @ per M....................................... 12 00
25,000 " ash, @ per M......................................... 11 00
20,000 " red oak, common & better, @ per M.................. 15 00

　　　　"Yours truly,　　　　　　CAMERON BROS.
"Accepted:　　　　　　　PHŒNIX LUMBER Co.
　　　　　　　　　　　　　"By W. S. REED."

The evidence shows that the defendant repudiated the contract, and gave the plaintiffs notice that he would not perform it as early as April, 1887, and before the plaintiffs had sawed any of the lumber, but after they had purchased the logs out of which it might have been sawed. The learned circuit judge held that the rule of damages in this case was the profit which the plaintiffs would have made on the contract had they been permitted to perform the same. The appellant claimed that he had a right to show that the plaintiffs converted the logs into lumber and sold the same during the season of 1887, and that the measure of damages was the difference between what the lumber was sold for and what the defendant had agreed to pay for it, qualified, perhaps, by the fact that the plaintiffs had been to some expense in making the other sales, and any additional cost for manufacturing the lumber in excess of what it would have cost to manufacture the lumber according to the contract.

We think the learned circuit judge was right as to the rule of damages in this case. As said by the learned counsel for the appellant, the plaintiffs took no steps to perform the contract after they were notified by the defendant that he refused to perform it on his part. The rights of the parties under the contract were fixed at that time. Whatever the plaintiffs did with the logs after that was wholly immaterial to the defendant, except that the plaintiffs could not refuse to do anything more with the logs, and then charge the defendant in damages for their loss. That the

profit which the plaintiffs could have made on the contract, if they had been permitted to perform the same, is the correct rule of damages, and the one most in accordance with equity, is apparent from many considerations. Suppose the defendant had notified the plaintiffs that he repudiated the contract before anything had been done under it. In such case could the plaintiffs have voluntarily gone on and got out the logs and converted them into money, and charged the defendant with the difference between the contract price and the price they sold them for? It seems to us they could not. Their loss in such case would necessarily be the price the defendant had agreed to pay for the lumber, less the cost of its production by the plaintiffs. Can they enhance such damage against the defendant by going on and manufacturing the lumber and selling it at a price which would not pay for the cost of such manufacture, and charge the loss to the defendant? We think not. In the case of the sale of merchandise the damages are limited by the difference in value of the article sold and the price agreed to be paid therefor, and if the vendor retains the goods sold after the date of delivery fixed on, and afterwards sells the goods for less than they were worth at the time fixed for the delivery, he cannot charge such loss to the defaulting vendee. *Chapman v. Ingram*, 30 Wis. 290, 295.

The rule as held by the learned circuit judge is the one which this court has established, and is the one which is sustained by the great weight of authority. *Salvo v. Duncan*, 49 Wis. 151; *Nilson v. Morse*, 52 Wis. 255; *Nash v. Hoxie*, 59 Wis. 384; *Jones v. Foster*, 67 Wis. 296. As the plaintiffs could not enhance the damages against the defendant by their neglect to make the best of what they had on their hands, so they are not bound to lessen the damages by making other contracts, and performing them, and giv-

ing the benefit of the performance of such contracts to the defendant.

We find no error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.